IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TADEUSZ STROSIN and KRYSTYNA STROSIN,<br>            Plaintiffs<br><br>      v.<br><br>THE J.M. SMUCKER COMPANY<br>       and<br>THE FOLGERS COFFEE COMPANY<br>       and<br>EXEL LOGISTICS,<br>            Defendants | :<br>:<br>: NO. 5:14-cv-07085-LS<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## O R D E R

**AND NOW**, this _____ day of _____ 2015, upon consideration of Defendants' Rule 35 Motion for Physical Examination of Plaintiff, and Plaintiffs' Response in opposition thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is **DENIED.**

                                                            BY THE COURT:


                                                            _____
                                                                                    J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TADEUSZ STROSIN and KRYSTYNA STROSIN,<br><br>　　　　　　　　Plaintiffs<br><br>　　　　v.<br><br>THE J.M. SMUCKER COMPANY<br>　　　　and<br>THE FOLGERS COFFEE COMPANY<br>　　　　and<br>EXEL LOGISTICS,<br><br>　　　　　　　　Defendants | NO. 5:14-cv-07085-LS |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 35 MOTION
FOR PHYSICAL EXAMINATION OF PLAINTIFF**

Plaintiffs hereby incorporate their memorandum of law in opposition to

Defendants' Rule 35 Motion for Physical Examination of the Plaintiff as a response to

Defendants' Motion.

　　　　　　　　　　　　　　　　　　　　**TUCKER LAW GROUP, LLC**

　　　　　　　　　　　　　　　　　　　　By:  /s/Kathleen Kirkpatrick
Dated: September 18, 2015　　　　　　　　Kathleen Kirkpatrick, Esquire
　　　　　　　　　　　　　　　　　　　　1617 JFK Boulevard, Suite 1700
　　　　　　　　　　　　　　　　　　　　Philadelphia, PA  19103
　　　　　　　　　　　　　　　　　　　　(215) 875-0609
　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TADEUSZ STROSIN and KRYSTYNA STROSIN,<br>      Plaintiffs<br><br>    v.<br><br>THE J.M. SMUCKER COMPANY<br>   and<br>THE FOLGERS COFFEE COMPANY<br>   and<br>EXEL LOGISTICS,<br>      Defendants | NO. 5:14-cv-07085-LS |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' RULE 35 MOTION FOR PHYSICAL EXAMINATION OF PLAINTIFF**

Plaintiffs, Tadeusz Strosin ("Mr. Strosin") and Krystyna Strosin (collectively, "Plaintiffs"), file the within response in opposition to Defendants' Rule 35 Motion for Physical Examination of the Plaintiff.

  **A.**  **Defendants are not entitled to additional x-rays pursuant to a Rule 35 examination.**

There is no good faith basis to subject Mr. Strosin to additional x-rays during a Rule 35 examination where Mr. Strosin has already undergone at least three radiology studies in the two years since the accident, which Defendants are already in possession of, and Defendants are in possession of thousands of pages of medical records from of 16 separate providers,[1] fully evidencing and specifically detailing Mr. Strosin's injuries

---

[1] Defendants have received records from the following medical providers thus far, all of which contain information about Mr. Strosin treatment and condition: VSAS Orthopedics, Progress Physical Therapy, Norristown Orthopedics, Mercy Suburban Hospital, Lehigh Valley Hospital, Jefferson Imaging, Foot Solutions, American Home Care, Mercy Cardiology, Urologic Consultants, Dr. Singer, Valley Kidney Specialists, Lehigh Valley Cardio Diagnostics, Health Spectrum, EMS records, and Walgreens.

and limitations. Defendants have received, through subpoena, several radiology images and reports from three different providers. Defendants have several other subpoenas still outstanding for which they will receive additional medical records, including motor vehicle records from a prior accident that this Court recently ordered were discoverable, records from the Social Security Administration that this Court recently ordered were discoverable, along with records from Bayada Home Health, Kinetic Concepts, Dr. John Solar and LVPG Infectious Diseases. In fact, Mr. Strosin's last radiology test for his ankle was on March 20, 2015, which is in Defendants' possession as it was produced by Defendants pursuant to subpoena. As recently as July 6, 2015, Mr. Strosin underwent a functional capacity evaluation[2] which is also in Defendants' possession as it was produced by them.

Defendants' citation to case law to support their position is not binding on this Court because it is from outside of this jurisdiction. Nevertheless, the cases cited by Defendants are distinguishable here. In Estevez, the court ordered that x-rays may be taken during a Rule 35 examination only where there were no other x-rays available in the case, the plaintiff's injuries were "vague" in nature and the plaintiff was seeking "large sums" of money damages. Estevez v. Matos, 1989 U.S. Dist. LEXIS 3512, *33 (S.D.N.Y. April 7, 1989). None of these factors apply in this matter. First, there are a number of radiology films available of Mr. Strosin's injury, all of which are in Defendants' possession. In fact, Defendants subpoenas yielded numerous radiology films from three different providers, along with thousands of pages of documents. The last MRI

---

[2] A functional capacity evaluation is a standard test performed to determine an individual's ability to participate in employment and activities of daily living. See American Occupational Therapy Association, Inc. website.

that Mr. Strosin had was in March of 2015. Therefore, there is an abundance of radiology films available for Dr. Wapner's review and consideration. Next, Mr. Strosin's injuries are not vague in the least. It is undisputed that he suffered an open fracture of the ankle, directly caused by the fall, requiring surgery and the placement of plates and screws. The thousands of pages of medical records also clearly evidence Mr. Strosin's precise injuries. Finally, Plaintiffs are not seeking excessively large sums of money in this matter and their demand is well within reason given the nature of the injuries.

In Pena, the court ordered that the plaintiff undergo an MRI as part of a Rule 35 examination; however, there had been no MRI or radiology film conducted of the plaintiff for the previous 18 years. Pena v. Troup, M.D., 1995 U.S. Dist. LEXIS 20623, \*\*9 (D.Co. June 22, 1995).  Additionally, the defendants in Pena submitted affidavits from physicians stating that there were only minimal risks associated with the MRI. Id. at \*\*10. Neither of these facts exist in this matter.

More on point, in Whitaker v. U.S., 2009 U.S. Dist. LEXIS 56735, \*5 (W.D.N.C. June 30, 2009), the court denied the defendants' motion to compel an MRI during a Rule 35 examination where the plaintiff had received several radiology films during the course of his treatment and the medical records detailing the injuries were "voluminous." Id. at 5.  Whitaker reasoned that "under Rule 35, the invasion of the individual's privacy by a physical or mental examination is so serious that a strict standard of good cause, supervised by the district courts, is manifestly appropriate." Id. at \*9, citing Guilford Nat'l Bank of Greensboro v. Southern Railway Co., 297 F. 2d 921, 924 (4th Cir. 1962). Here, as in Whitaker, there are several radiology films available for Dr. Wapner's review, along with voluminous medical records.

In sum, there is little to no additional information that Dr. Wapner may glean from conducting an additional set of x-rays on Mr. Strosin's ankle, all of which has already been fully, completely and repeatedly captured. This must be balanced with the invasive nature of the x-rays and exposure to radiation of Mr. Strosin, making the additional tests unnecessary and unwarranted.

Alternatively, if this Court determines that Defendants are entitled to the x-rays, Plaintiffs request that the number of x-rays be specifically defined and/or limited. Defendants have not made a good faith effort to determine or limit the number of x-rays they alleged need. In fact, they state that they have "no obligation to provide [Plaintiffs] with the number of radiographic images expected to be taken." (See Exhibit B to Defendants' Motion.)  It is a mystery as to why they need three separate x-rays for one area of fraction on one ankle. It should be noted that Mr. Strosin's own treating physicians, over the course of two years, have conducted only this many radiology tests in total, and none have needed more than one radiology film at any one time.  The radiology films have been spaced months apart because there is no benefit to taking more than one film at a time. Thus, Defendants should be required to clearly state the number of x-rays to be completed and type of x-rays, to ensure that no radiology films will be duplicative or unnecessary. This will allow Plaintiffs an opportunity to evaluate whether such studies are necessary.

### B. Plaintiffs do not object to Defendants' refusal to supply an interpreter to the IME examination.

The Court need not consider Defendants' motion to strike Plaintiffs' request for an interpreter at the Rule 35 examination. However, it should be made clear that Mr.

Strosin will object to resubmit to an IME if Dr. Wapner or Defendants determine that the IME was unable to be fully conducted due to a language barrier.

This issue arose when Plaintiffs' counsel, in good faith, notified defense counsel that an interpreter would likely be necessary in order for Dr. Wapner to communicate with Mr. Strosin in English. Defendants proceed with the Rule 35 examination without an interpreter at their own risk. Defendants concern that Dr. Wapner must be in a position to complete a thorough and complete examination and review of Mr. Strosin's physical condition is at odds with their refusal to supply an interpreter. Notably, the scope of Defendants' Rule 36 examination includes "the taking of medical history." If they believe that the taking of medical history can be achieved without an interpreter, despite Plaintiffs' warning in this regard, and if they wish to take the risk that the taking of the history may not be achieved because of the language barrier, than that is their choice.

Defendants' reliance on the Federal Motor Carrier Safety Act ("FMCSA") is a non-issue and has no bearing on whether an interpreter is needed in this civil action. Notably, this matter involves whether Defendants negligently loaded the cargo into the subject container, which then caused the cargo to become displaced and fall out of the truck that Mr. Strosin was attempting to open. Whether the FMCSA was complied with at some point earlier in time is irrelevant to the issues in this matter, and will not be litigated in this matter, nor are Plaintiffs required to prove compliance with FMCSA to prove their claims. Defendants cannot point to the FMCSA as a defense to this litigation. The fact remains that Mr. Strosin is not fully fluent in the English language and this fact cannot be ignored throughout the litigation, unless Defendants wish to

proceed at their peril. Defendants' myopic assumption that whatever may be written in the FMCSA is necessarily an established fact in this matter is one that they may certainly choose to have, but its patent inaccuracy will be recognized very clearly by the jury, Dr. Wapner and defense counsel through pre-trial discovery.  See <u>Dahn World Co. v. Eun Hee Chung</u>, 2009 U.S. Dist. LEXIS 9802, *7 (D. M.D. Feb. 9, 2009) (even though defendant could speak English and earned multiple degrees from universities in the U.S., she was entitled to award for interpreter costs because "it [was] not unreasonable or unexpected that [defendant] would require the assistance of an interpreter to ensure that she understood the questions she would be asked during her deposition").

Defendants are the party requesting that the Rule 35 examination be conducted, and they are not obligated to conduct one but do so by voluntary choice. Just as they are required to supply and pay for the physician, facility, office and testing apparatus for the Rule 35 examination, they should be required to supply any interpreter or other necessary instrument or condition attendant to the examination. See <u>Smithkline Beecham Consumer Healthcare, L.P. v. Colgate-Palmolive</u> <u>Co.</u>, 2000 U.S. Dist. LEXIS 7528, 18-19 (E.D. Pa. June 2, 2000) (the party conducting the deposition must pay the fee for the interpreter).  Defendants are insisting that the examination be conducted precisely the way they choose, i.e. taking of an unlimited number of radiology films, selection of their doctor and their location, the physical examination that will be conducted, the questioning of Mr. Strosin for the medical history, etc. However, they change their position as it relates to another indispensable piece of the examination, which is the interpreter. Defendants must understand that conducting an IME is not without costs, and they are required to pay all attendant costs, including the fee for the

use of an interpreter. See Dahn World Co., 2009 U.S. Dist. LEXIS at *7 ("when a party requests an interpreter for a deposition, the cost for the service is borne by the party seeking the deposition").

Although no case could be found pertaining to which party must bear the expense of an interpreter for a Rule 35 examination, a number of cases were found pertaining to the payment of an interpreter's fee for a deposition. Those cases require that the party requesting the deposition pay for the interpreter. See Dahn World Co., 2009 U.S. Dist. LEXIS at *7 ("when a party requests an interpreter for a deposition, the cost for the service is borne by the party seeking the deposition"); In re Puerto Rico Electric Power Authority, 687 F.2d 501 (1st Cir. 1982) (the party seeking the discovery bears the burden of paying the fee for translation needed to obtain that discovery); Lopez-Gomez v. Jim's Place, LLC, 60 F. Supp. 3d 853, 856 (W.D. Tenn. 2014) ("defendants shall be responsible for providing a certified Spanish interpreter at plaintiff's deposition and paying for those services.") To the extent that Defendants wish to conduct the IME through the use of an interpreter, or this Court orders an interpreter, the cost for same should be borne by Defendants.

Defendants' refusal to supply an interpreter for Mr. Strosin's deposition was also an issue between counsel. Again, Mr. Strosin is willing to submit to Defendants' notice of deposition without an interpreter if Defendants wish to proceed at their own risk and presume an inaccurate fact, i.e. that Mr. Strosin is a fluent English speaker. However, Mr. Strosin will object to the resubmission to a second deposition should Defendants determine that a language barrier prevented the full and complete exchange of questions and answers.

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Date: September 18, 2015        By: /s/ Kathleen Kirkpatrick
                                Joe H. Tucker, Jr., Esquire
                                Kathleen Kirkpatrick, Esquire
                                1617 JFK Boulevard, Suite 1700
                                Philadelphia, PA  19103
                                (215) 875-0609
                                Attorneys for Plaintiffs