UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

TADEUSZ STROSIN et al., :
:
            Plaintiffs, :
    v. : No. 5:14-cv-07085
:
THE J.M. SMUCKER COMPANY et al., :
:
           Defendants. :
_____

**MEMORANDUM OPINION AND ORDER**

**Defendants' Rule 35 Motion for Physical Examination of the Plaintiff – Denied**

**Joseph F. Leeson, Jr.**                                                               **October 20, 2015**
**United States District Judge**

**I.    Introduction**

      Presently before the Court is Defendants The J.M. Smucker Company, The Folgers Coffee Company, and Exel Logistics's Rule 35 Motion for Physical Examination of the Plaintiff. The parties dispute whether Defendants should be permitted to subject Plaintiff Tadeusz Strosin to X-ray radiography and magnetic resonance imaging ("MRI") to assess an injury to his right ankle that is at issue in this action and who should be required to bear the cost of providing Plaintiff with an interpreter during his physical examination if one is required. For the following reasons, the Court denies Defendants' motion to examine Mr. Strosin by means of X-rays or MRIs, and determines that Defendants must bear the cost of providing him with an interpreter if Defendants determine that one is required.

1

**II.     Background**

Plaintiff Tadeusz Strosin was formerly employed as a truck driver for Evans Delivery Inc. Compl. ¶ 12, ECF No. 1. On or about May 15, 2013, he loaded a container belonging to either Defendant J.M. Smucker or Defendant Folgers onto his truck at the CSX Intermodal terminal, located at 3400 Columbus Boulevard in Philadelphia, Pennsylvania. Compl. ¶ 14. The destination was a terminal belonging to either J.M. Smucker or Folgers, or both, located at 8451 Williard Avenue in Breinigsville, Pennsylvania. Id. ¶ 15. Mr. Strosin did not know the contents of the container, nor did he open the container, adjust its contents, affect the packaging of the contents, or otherwise "check the load" in any respect while the container was in his possession. Id. ¶ 16. As Mr. Strosin later learned, inside the container were cans of Defendant Folgers's coffee that were loaded onto pallets, with each pallet weighing approximately 80-90 pounds. See id. ¶¶ 19-20. Mr. Strosin left the CSX Intermodal terminal with the container, bound for the Breinigsville terminal, where he arrived later that day. Id. ¶ 17. As he began to open the door to the container, "the packaging pressed forward, whipping the door completely open and causing the packaging to separate and fall onto [his] body." Id. ¶ 18. Two pallets "crushed [his] lower extremity," which caused him to "suffer an open compound fracture of the ankle, which required immediate treatment and surgery." Id. ¶¶ 21, 24. He later underwent a second surgery, was unable to walk for ten to twelve weeks, was terminated from his position as a truck driver, and required surgery for a heart condition caused by the stress from these events. See id. ¶¶ 24-26. Mr. Strosin contends that his injuries are permanent, and that he may be prevented from engaging in his normal activities "for an indefinite time into the future." Id. ¶¶ 18, 28-29.

Plaintiffs filed this suit on December 12, 2014, alleging that Defendants' negligence in the loading, securing, and hauling of the container prior to Mr. Strosin loading the container onto his truck at the CSX Intermodal terminal caused his injury. See id. ¶¶ 30-38. Mr. Strosin's

spouse joins in his suit, seeking relief for "the loss of her husband's services, companionship, assistance, personal relationship and consortium as a direct and proximate result of Defendants' conduct." Id. ¶ 40. Defendants now move the Court to order Mr. Strosin to submit to a physical examination of his right ankle. The dispute between the parties, however, is limited to the question of whether Mr. Strosin may be subjected to X-rays or MRIs as part of that examination and who must bear the cost of an interpreter if one is required for Mr. Strosin as part of the examination.

### III. Defendants have not shown good cause for this Court to order Mr. Strosin to submit to X-rays or MRIs.

"The Court where [an] action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The Court may only order such an examination "on motion for good cause." Fed. R. Civ. P. 35(a)(2). "Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'" Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964). Good cause requires more than a mere showing of relevance, "for the relevancy standard has already been imposed by Rule 26(b). Thus, by adding the words 'good cause,' the Rules indicate that there must be greater showing of need under [Rule 35] than under the other discovery rules." Id. at 118 (quoting Guilford Nat'l Bank of Greensboro v. S. Ry. Co., 297 F.2d 921, 924 (4th Cir. 1962)). Relevant to this inquiry is "[t]he ability of the movant to obtain the desired information by other means." Id.; see Marroni v. Matey, 82 F.R.D. 371, 372 (E.D. Pa. 1979) (holding that Rule 35 requires that "less intrusive methods of discovery first be explored" before seeking an examination under the Rule).

3

Plaintiffs contend that there is no good cause for Defendants to obtain additional X-rays or MRIs because Mr. Strosin "has already undergone at least three radiology studies in the two years since the accident, which Defendants are already in possession of."[1] Defendants claim that they have an "irrefutable right to obtain x-rays" and that they are "entitled to obtain the x-rays and MRIs regardless of what other radiographic evidence may be available at the time of the Rule 35 examination."[2] Defendants are incorrect. "An order for the physical or mental examination of a party is not granted as of right." 8B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2234.1 (3d ed. 2010). "Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule." Schlagenhauf, 379 U.S. at 121. Defendants submit that, "[h]ypothetically, it matters not whether Plaintiff were to have received identical x-rays and MRIs the day prior,"[3] but good cause plainly would not exist to order Mr. Strosin to submit to a medical examination if Defendants could obtain precisely the evidence they sought through other means. "Good cause requires a showing that the examination could adduce specific facts relevant to the cause of action and is necessary to the defendant's case," see Womack v. Stevens Transp., Inc., 205 F.R.D. 445, 447 (E.D. Pa. 2001) (citing Ragge v. MCA/Universal Studios, 165 F.R.D. 605 (C.D. Cal. 1995)), and it is not necessary for Mr. Strosin to undergo additional X-rays or MRIs if that very evidence is available to Defendants through other means. Defendants offer no other justification for their request other than their claim that they are entitled to require Mr. Strosin to submit to additional X-rays or MRIs. Defendants, therefore, have failed to show good cause for their request.

---

[1] Pls.' Mem. Opp'n Defs.' Mot. 1, ECF No. 26.
[2] Defs.' Br. Supp. Mot. 6, ECF No. 25.
[3] Defs.' Br. Supp. Mot. 6.

This ruling does not foreclose Defendants from being able to obtain additional X-rays or MRIs of Mr. Strosin's injury if they are able to articulate good cause for their request. Under these circumstances, that bar is not particularly high. Plaintiffs initiated this negligence action against Defendants, and "[a] plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Schlagenhauf, 379 U.S. at 119. In addition, the type of examination sought is relevant to whether good cause exists to permit the examination, and familiar radiology tests like X-rays and MRIs are frequently permitted. See Wright & Miller, supra, § 2235.

Thus, if Mr. Strosin's previous X-rays or MRIs are stale, see Gawel v. Consol. Rail Corp., No. 93-1758, 1993 WL 308273, at *1 (E.D. Pa. Aug. 5, 1993) (requiring the plaintiff to undergo an additional hearing test where the prior examination was conducted twenty-two months prior), were improperly performed, see Shirsat v. Mut. Pharm. Co., 169 F.R.D. 68, 71-72 (E.D. Pa. 1996) (requiring the plaintiff to take a particular psychological test for a second time where the defendant contended that the previous test was not conducted "fully or properly"), or are not sufficient for Defendants to fully assess Mr. Strosin's injuries, see Carter v. Zimmerman, No. 84-4183, 1986 WL 1978, at *1 (E.D. Pa. Feb. 6, 1986) (requiring the plaintiff to undergo an additional blood test where the previous test was not dispositive of whether the plaintiff had a particular illness), good cause would likely exist to require Mr. Strosin to submit to additional X-rays or MRIs. But when a party seeks additional X-rays or MRIs despite the fact that such imaging has already been performed and is available to the party, good cause requires more than

the mere assertion that the party wants them.[4] A holding to the contrary would nullify Rule 35's requirement that a physical or mental examination only be ordered "on motion for good cause."[5]

### IV. Defendants must bear the cost of an interpreter for the Rule 35 examination if Defendants determine that an interpreter is necessary.

When a court orders a party to submit to a physical or mental examination, generally "[t]he party being examined must pay his or her own expenses for coming to the examination and bear the loss of time thus caused," while "[t]he moving party must bear the expense of the examination itself." See Wright & Miller, supra, § 2234; see Duarte v. Wong, No. C 05-01374, 2007 WL 2782940, at *9 n.4 (N.D. Cal. 2007) ("The party who requested the examination must pay for it."); Matthews v. Watson, 123 F.R.D. 522, 523 (E.D. Pa. 1989) (recognizing the "general obligation of plaintiffs to travel, at their own expense, to a deposition or examination by defendants in the district in which plaintiffs have filed suit"). This allocation comports with the presumption under the discovery rules that the expenses a party responding to a discovery request must bear are those expenses required to comply with the request, see Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978), since complying with a request to submit to a

---

[4] It is important to note that the present controversy is limited to the question of whether Mr. Strosin should be subjected to additional X-rays or MRIs, not whether Defendants may be permitted to conduct an independent examination of him. When a party seeks to present evidence of a physical or mental condition through the testimony of the party's treating physicians while prohibiting the opposing party from conducting any independent examination of its own, the parties may not be on equal footing. Without the ability to conduct its own examination, "the [d]efendant's defense would be limited to the mere cross-examining of evaluations offered by [p]laintiff's experts. The promulgators of Rule 35 deemed that the opportunity to cross-examine was an 'insufficient test of truth' and as a result, independent examinations were prescribed." See Womack, 205 F.R.D. at 447 (citation omitted). Here, however, Plaintiffs do not seek to foreclose Defendants from conducting their own independent examination. Rather, they object only to subjecting Mr. Strosin to additional X-rays or MRIs. Nor do Defendants seek a mental examination of him, which necessarily involves a greater degree of subjectivity on the part of the examiner than taking an X-ray or an MRI, which may supply the good cause necessary to require a party to undergo a second evaluation by a different examiner. See Shirsat v. Mut. Pharm. Co., 169 F.R.D. 68, 72 (E.D. Pa. 1996) (suggesting that the plaintiff may have chosen to undergo a particular psychological test after learning that the defendant sought an order from the court to require the plaintiff to submit to the test under the defendant's conditions because the plaintiff may have "preferred to have his own psychiatrist administer the test based on his belief that an advantage could be gained").

[5] To the extent that Defendants can articulate such a reason for requiring Mr. Strosin to submit to additional X-rays or MRIs, the Court encourages Defendants to share that reason with Plaintiffs and resolve this matter by agreement.

mental or physical examination under Rule 35 simply requires the party to "submit to physical or mental examination by a suitably licensed or certified examiner." See Fed. R. Civ. P. 35(a). It may, however, be appropriate to alter this allocation of expenses if a party insists that it must be furnished with an interpreter to be able to partake in discovery requested by the opposing party despite clear evidence that the party does not need one. See, e.g., Quinones v. Univ. of P.R., No. 14-1331, 2015 WL 3604152, at *3, *5 (D.P.R. June 8, 2015) (requiring the plaintiff to bear the cost of an interpreter for her deposition if she insisted on having one present, in light of evidence that she had studied English throughout her education, took classes in English throughout her graduate and post-graduate courses, took a medical licensure examination in English, published several articles in English, and represented on her resume that she was fluent in written and spoken English).

Defendants ask the Court to make a determination that Mr. Strosin "possesses sufficient English fluency such that a translator is not required for any proceedings in this case, or alternatively, [that] the cost for a translator must be borne solely by Plaintiffs."[6] It appears that when Defendants filed their present Motion, they believed that Plaintiffs were insisting that an interpreter be furnished for Mr. Strosin at his Rule 35 examination. See Defs.' Br. Supp. Mot. 8 ("Plaintiffs' demand for a translator is part of a dilatory tactic that attempts to burden the parties and this Honorable Court by raising unfounded objections."). However, Plaintiffs represent in their response to Defendants' Motion that "Plaintiffs do not object to Defendants' refusal to supply an interpreter to the [Rule 35] examination." See Pls.' Mem. Opp'n Defs' Mot. 4. Rather, Plaintiffs submit that "[i]f [Defendants] believe that the taking of medical history can be achieved without an interpreter, despite Plaintiffs' warning in this regard, and if they wish to take the risk that the taking of the history may not be achieved because of the language barrier, [then]

---

6  Defs.' Br. Supp. Mot. 7.

that is their choice." Id. at 5. Accordingly, the Court need not determine whether Mr. Strosin needs an interpreter to proceed with Defendants' examination. The choice of whether to furnish Mr. Strosin with an interpreter is for Defendants to make.

If Defendants elect to furnish an interpreter, that is a cost that Defendants must bear. While, as in Quinones, it may be appropriate to shift that cost to the party being examined if that party insists on an interpreter being present despite evidence that none is needed, Defendants here are free to decide whether they believe that an interpreter is warranted. If Defendants themselves believe that an interpreter is necessary, Defendants must bear that cost, just as Defendants must bear the cost of all other aspects of the examination that they deem to be necessary. See Calderon v. Reederei Claus-Peter Offen GmbH & Co., 258 F.R.D. 523, 528 (S.D. Fla. 2009) (observing that if a party to be examined by an orthopedic surgeon needed the services of an interpreter, the party requesting the examination would be responsible for the cost). But if Defendants believe, as they currently argue to the Court, that Mr. Strosin possesses sufficient fluency in English to not warrant the services of an interpreter, they are free to proceed without one.

**V.    Order**

ACCORDINGLY, this 20th day of October, 2015, Defendants The J.M. Smucker Company, The Folgers Coffee Company, and Exel Logistics's Rule 35 Motion for Physical Examination of the Plaintiff, ECF No. 25, is **DENIED**.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

8